# CHARLESTON.

BUSHONG *v.* RECTOR.

32 311
f 59 682

*(GREEN, JUDGE, Absent.)

Submitted January 22, 1889.—Decided March 4, 1889..

1. HUSBAND AND WIFE—SEPARATE ESTATE—EJECTMENT—PA
   TIES—WRIT OF POSSESSION.

   A wife living with her husband on land, which she claims as her separate estate under a right derived from a person other than her husband prior to commencement of the action, can not be turned out of possession by a writ of possession in an action of ejectment against her husband, to which she was not a party. In such case she is as to her claim a person distinct from her husband and must be made a party to the action like any other person, in order to bind her by the judgment.

2. HUSBAND AND WIFE—WRIT OF POSSESSION—EQUITY—JURIS-
   DICTION—INJUNCTION.

   In such a case equity has jurisdiction by injunction to restrain the execution of the writ of possession as to her. The parties will be left without prejudice from the decree to test their titles at law.

*R. H. Smith* for appellant.

*J. A. Hutchinson* for appellee.

BRANNON, JUDGE :

In July, 1882, Enoch Rector brought an action of ejectment in the Circuit Court of Wood county against Daniel Bushong and O. M. Bushong for 100 acres and thirty one poles of land and in November, 1883, recovered judgment and issued a writ of possession, when Elizabeth Bushong obtained an injunction against the enforcement of the writ as to her. Rector answerd the bill denying plaintiff's right, and depositions of numerous witnesses were taken, and the court dissolved the injunction and dismissed the bill, reserving right to Elizabeth Bushong to defend or prosecute any right or claim, which she might have relative to the land, in any proceedings at law.

---

*On account of illness.

The record shows, that by deed of May 21, 1880, one Peter Curry conveyed the land to Elizabeth Bushong, who is the wife of O. M. Bushong, which deed was recorded June 3, 1881; and it also shows a deed dated February 16, 1874, recorded April 25, 1882, from Daniel Bushong to Rector. Daniel Bushong was in possession though not under any title, so far as appears, eight years, before he made the deed to Rector in 1874. The land had belonged to an oil-company, which suspended operations and abandoned the land, and Bushong simply took possession of it, as if there was no owner. Rector was owner of $2,000.00 stock in the oil-company, and set up a claim to the land on that account, and sought possession in order to thereby obtain title, as he says. Upon his conveyance to Rector Daniel Bushong took a lease for one year in writing from Rector and continued in possession under a verbal arrangement afterward. He was to pay taxes and did so for five years, (1867 to 1871,) and handed over to Rector the tax-receipts, which he files in the name of J. S. Hoffman for part of the time, and of Imperial & Kanawha Oil Company for part of the time.

O. M. Bushong is a son of Daniel and was living with his father on the land, when he married the plaintiff, Elizabeth Bushong, and he states, that he and his wife lived there from 1869. He states that Daniel turned over possessions to his wife and himself in 1870, in consideration that they were to support Daniel and his wife. Elizabeth Bushong in one deposition states, that she had been in possession since 1870, and when asked who put her in possession, answered, that Daniel Bushong did under agreement by her to keep him and his wife; and in another deposition she stated, that Peter Curry put her in possession, and also that Daniel Bushong put her in possession, in consideration that she would keep him and his wife during life, and that under her agreement she had kept Daniel until his death, and was still keeping his wife. The evidence shows, that O. M. Bushong recognized himself as a tenant of Rector, though later he repudiated it to Rector, and then he sued.

Elizabeth Bushong appeals here for relief against the decree of the Circuit Court.

The plaintiff complains, that she is to be turned out of

house and home by a writ of possession upon a judgment in ejectment, to which she was not a party. Herman on Executions, 530, says : "Under this writ it is the duty of the sheriff to remove all persons from the premises described in the writ, and all goods and property that may be thereon. The plaintiff must be put into full and complete possession of the premises." Properly understood, this is good law, but we must not be misled by its generality. The writ is only to execute the judgment and can go no further than the judgment; and this statement must be taken subject to the general rule, that a judgment does not bind strangers to it.

Freeman on Executions, § 475, lays down the law thus : "The defendant and all the members of his family, together with his servants, employes and his tenants at sufferance may be removed from the premises in executing a writ of possession. It has even been held that the defendant's wife must be removed, although she was not a party to the suit, and claimed the premises as her separate estate. Notwithstanding this decision, we doubt whether a wife, or any other member of the defendant's family not a party to the suit, can lawfully be dispossessed of his or her separate estate, unless possession was acquired by them after the institution of the action. No person in possession of the premises, claiming title thereto at the commencement of the action, can be dispossessed, unless he was made a party to the suit, so as to be bound by the judgment; nor can the tenants or agents of such person be lawfully removed, although their entry was subsequent to the institution of the action. On the other hand, all persons acquiring possession from and under the defendant or defendants, during the pendency of the action, whether as vendees, lessees or otherwise, are bound by the judgment, and should be removed under the writ. Persons acquiring possession of the defendant prior to the suit can not be dispossessed, unless they were made parties defendant. All persons entering upon the possession of the property *pendente lite* are presumed to have entered under the defendant, and *prima facie* are liable to be turned out by the writ. It is obvious that the temptation to render the plaintiff's action fruitless by turning over the possession to one not a party to the suit is very great. All courts will exercise great caution

in considering the right of a person to retain possession after the judgment, when it is clear that he entered *pendente lite.* His right will always be denied, unless it is clear that he did not enter under the defendant, nor by any collusion with him. Mere tricks and devices to rob the plaintiff of the result of his litigation will not be encouraged. But, if it clearly appears that any person has entered subsequently to the institution of the suit, not under the defendant but in his own right, claiming adversely to the defendant, then the officer can not lawfully dispossess such person."

The Code of 1887 c. 90, s. 35 provides, that a judgment in ejectment "shall be conclusive as to the right of possession established in such action upon the party, against whom it is rendered, and against all persons claiming from, through or under such party by title accruing after the commencement of such action." It does not affect persons not parties claiming by title existing before the action, nor any one not claiming by, through or under the defendant, a stranger in title to the defendant in the action. Law and reason and justice declare this. And a wife is as to her separate estate a stranger to her husband,—a wholly distinct person. Our statute giving her capacity to take and hold property as her separate estate, as if she were a single woman, has as to such property dissolved the unity of person of man and wife, which existed at the common law. Code s. 6, c. 66.

Now suppose Elizabeth Bushong to be in possession under a contract with Daniel Bushong. That contract though with the defendant was made long before the commencement of the action, and under the law above cited her right to possession under it could not be affected by the action. Then suppose her in possession under her deed from Curry. Her title under it was both before the commencement of the action and not under the defendant but by a distinct claim, and it could not be affected by the action. Before the suit she was living on the land with her deed in her pocket conferring a separate estate or claim thereto; and the fact, that she was living with her husband, though he were Rector's tenant, would not render her any the less in the possession for the purposes of this case; her possession was sufficiently actual to protect her from ouster by the writ. If a son had had a

title to the land distinct from his father, could he have been thrown out under the judgment, to which he was no party? No more could the wife; for as to her separate estate she is just as distinct a person as the son.

The Pennsylvania case (*Johnson* v. *Fullerton,* 44 Pa. St. 466) criticised above by Freeman is not supported by other cases and is illogical in view of the entire separation of the wife from the husband as to separate estate. Before binding her by a judgment she ought to have an opportunity to defend her property and be given a day in court, and ought not to be precluded on the ground taken by the Pennsylvania case, that her husband should have defended on her right. And it is not consonant with the principles stated by Judge Woods in *Hughes* v. *Mount,* 23 W. Va. 130, which, I think, substantially rule this case. In that case Mount and his wife lived on the land, he as tenant of Hughes and Murphy, she having deeds from other parties. Hughes and Murphy recovered against the husband a judgment in unlawful detainer, and under a writ of possession in it turned husband and wife out. She, finding no one in the house, re-entered into possession, and was sued in unlawful entry and detainer. Judge Woods says that the position of the plaintiffs assumed that the wife re-entered unlawfully and forcibly, and that before the writ was executed possession was not in the defendant, but in her husband, and that by executing the writ against him the possession of the wife, if any she had, was devested and transferred to the plaintiff. This assumption he did not sustain. He said the questions whether she had a separate estate, and was entitled to the possession, were questions to be considered (in the second action of unlawful entry, as I understand it) in determining whether the writ, and all proceedings under it, were not, as to her, mere nullities, and whether the act of dispossessing her husband was not, as to her, mere lawlessness, not depriving her of her right to reclaim her property by the right of lawful re-entry.

He further said: "If, as the defendant claims, it be true that the land belonged to her in fee-simple as her separate estate, then said B. F. Mount had no interest therein, and the plaintiffs by the deed from Commissioner Sands acquired

no title thereto. If said land, at the time of said sale under said decree to plaintiffs, so belonged to defendant, B. F. Mount could neither sell nor lease the same, or do any other act to deprive her of the possession and enjoyment of said land without her consent. If, under such circumstances, her husband undertook to lease her land from a stranger, he could acquire no possession by the lease, nor could he, at the expiration of his lease, surrender to his pretended landlord a possession which he has never acquired, nor could the landlord recover from him a possession he never had, and which he never transferred to his tenant. Whether such a state of facts exists or not are questions of title to be determined at the trial. It is true that if a husband should undertake to lease a wife's land from a stranger, that he could not resist his landlord's action, but it will scarcely be contended that the judgment recovered against him could be satisfied out of his wife's land, or that it could confer upon him any right to the possession thereof."

So I hold, that, whether Mrs. Bushong's title was good or bad, whether it was better or worse than Rector's, whether he or she was entitled to the sole possession, are questions to be tried in a proper proceeding, and her right and her actual possession are not to be dissipated by a writ of possession against another, an absolute nullity as to her, but she is entitled to a day in court to have her rights weighed in the balance of the law and passed on by due process of law by trial and judgment. The law gives her an advantage in an action of ejectment as one in possession, which she can only lose by due legal process. Rector must bring an action against her, she being in possession.

Appellee's counsel urges, that the appellant's deed from Curry is trumped up with fraudulent intent as the work of a conspiracy to defeat the plaintiff's action. The answer is, that, before the action began, she was on the land by a deed dated, acknowledged and recorded before the action. If it had been executed after the action began, there might be force in the claim, that it was born but to defeat the fruit of the action,—we might consider, whether such was its purpose; but I fail to see how we can consider this matter, seeing that her possession and claim, be it good or bad, existed

before the action. How can it be said it was originated to defeat an action not in being? I quote at this point Freeman's text: "No person in possession claiming title at the commencement of the action can be dispossessed unless made a party to the suit." If next it be said that the plaintiff's claim was conceived in fraud, to defeat not the action of Rector but his title, and to secure the land from one, who had no title, Curry, (but what his right was does not appear,) I respond. That is a question, whatever be the effect of it if true, to be determined in a suit, to which plaintiff and defendant are parties. Therein the rights of the parties may he heard. This is but an injunction obtained by a wife to save her from expulsion from her home under a writ of possession against her husband in an action, to which she was not a party, she not being therein simply and only as a wife but having a claim to the land independent of her husband; and we hold with her on the fact, that she was no party to the action, leaving the titles of plaintiff and defendant to be litigated in another proceeding without prejudice from the court's decree in this case.

I do not see, that the principle of estoppel urged by appellee, by which a tenant and those claiming under him are hindered from denying the landlord's title, as expounded in *Emerick* v. *Tavener*, 9 Gratt. 230, applies to this case. Tavener leased land to Emerick, and afterwards Emerick conveyed a portion to Alton. It was held that in an action by Tavener against Emerick and Alton not only was Emerick estopped from setting up title against Tavener, until he restored possession or disclaimed to hold as tenant and brought home to Tavener notice of his disclaimer, but further that Alton by entering as purchaser from Emerick became subject to the same relations held by Emerick to Tavener, and neither could set up adverse title. But there Alton entered under a conveyance from the tenant, claimed under him; here Mrs. Bushong claims under not her husband but Curry. As far as her claiming under Daniel Bushong is concerned, so far as the evidence shows, the date of his giving her or her and her husband, which ever it be the possession under agreement to keep Daniel and his wife, was in 1870, and Daniel did not become Rector's tenant till 1874, and her

right and possession under Daniel, as it existed before his lease of Rector, would remain so after that lease, and not fall under the principle of *Emerick* v. *Tavener*, because earlier in date; and her continuing there afterwards could not change the state of things existing before; and the fact, that she was on the land as Bushong's wife living with his father does not make her a subtenant, or put her in a condition, which would forbid her from acquiring from another a hostile title. It would make her a member of his family and liable to go off under the writ, if she had no separate claim, but it would not establish a relation of landlord and tenant.

The case cited by appellee's counsel (*Higginbotham* v. *Higginbotham*, 10 B. Mon. 369) does not apply. Sally Clarke, as the judge there says, merely resided with the defendant by his permission without any interest in or title to the premises,— a part of his family,—and as such the writ authorized the sheriff to turn her out.

*Mattox* v. *Helm*, 5 Litt. 186, does not apply, because the parties there in question entered without title under Elliott, the defendant, and the court said they were mere tenants at will under Elliott having no fixed right or term and were liable to go out, no matter when they entered. This is consistent with the rule as stated by Freeman, that a writ of possession would turn out mere tenants by sufferance of the defendant in the writ.

*Sinclair* v. *Worthy*, 84 Amr. Dec. 357, was a mere refusal of the court to stay a writ of possession on the suggestion that title was in some one else. It does not apply here. That an injunction will lie to enjoin expulsion from one's home under a writ of possession against one not a party to it is, we think, clear. *Goodnough* v. *Sheppard*, 28 Ill. 81; *Stewart* v. *Lavender*, 30 Ark. 594; Herm. Ex'ns, 615.

The decree of the Circuit Court is reversed, and the injunction as prayed for in the bill must be perpetuated with costs to Elizabeth Bushong in both courts, without prejudice from this decree to the parties from asserting any title to the land, which they may have, in any other suit.

REVERSED.